IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOE,<br><br>            Plaintiff,<br>      v.<br><br>COUNTY OF LEHIGH,<br><br>and<br><br>CEDARBROOK SENIOR CARE & REHAB,<br><br>            Defendants. | Case No. _____ |

**COMPLAINT — CIVIL ACTION**

And now Plaintiff, by and through undersigned counsel, files the following Complaint, and avers as follows:

**I.      PARTIES AND JURISDICTION**

1.      Plaintiff ("Jane Doe" or "Ms. Doe") is an adult individual and citizen of the Commonwealth of Pennsylvania, who resides at the following address, ████████████████████████████████████████████████████████████████, in the City of Bethlehem and County of Northampton.

2.      Defendant, County of Lehigh, employed Doe as a Recreational Aide II, at the time of her wrongful and retaliatory discharge.  The main office for the County of Lehigh is at 17 South Seventh Street, Room 103, Allentown, PA 18101-2401.  This Defendant assigned Doe to work at Cedarbrook Senior Care & Rehab, specifically at its Fountain Hill nursing facility, located at 724 Delaware Avenue, Fountain Hill, PA 18015.

3.      Defendant, Cedarbrook Senior Care & Rehab, employed Doe as a Recreational Aide II, and/or exercised control over Doe's assailant, at all times relevant hereto.  This

Defendant has a registered office address and principal place of business at 350 South Cedarbrook Road, Allentown, PA 18104. This Defendant employed Doe at 724 Delaware Avenue, Fountain Hill, PA 18015.

4. This Court has subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 because the claims present a federal question.

5. This Court has jurisdiction over Defendants because Defendants' contacts with this state and judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the Supreme Court of the United States in International Shoe Company v. State of Washington, 326 U.S. 310 (1945), and its progeny.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1)-(2) because Defendants reside in and/or conduct business in this judicial district, and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

**II.    MATERIAL FACTS**

7. Plaintiff was hired by Cedarbrook Senior Care & Rehab; Cedarbrook Nursing Homes; Cedarbrook Nursing; and/or County of Lehigh, as a Therapeutic Recreation Aide I originally in 2004.

8. Ms. Doe performed satisfactorily and was then moved to full-time, Therapeutic Recreation Aide II.

9. Ms. Doe had been employed for almost fifteen (15) years and was a commendable employee prior to her wrongful and retaliatory discharge.

10. For example, during her nearly 15-year tenure, Ms. Doe was named in the Dreamweaver of the Year lineup in, Ms. Doe believes, 2015.

11. Ms. Doe also recalls that, on another occasion, Ms. Doe had an idea that was readily used for a convention by Cedarbrook.

12. Ms. Doe recollects receiving positive performance reviews throughout her nearly fifteen (15) year tenure there.

13. Ms. Doe is female.

14. Ms. Doe recalls that, during her employment, there was a male resident, Mr. Timothy McEllroy ("Mr. McEllroy"), who was known by staff to regularly sexually assault the female employees.

15. Mr. McEllroy was not known to sexually assault any of the male employees.

16. Ms. Doe was sexually assaulted on multiple occasions at her job throughout her employment.

17. Ms. Doe alleges that she was sexually assaulted by Mr. McEllroy when Mr. McEllroy grabbed her breasts, many times, during the course of many years.

18. In or around 2017, Ms. Doe also recalls an incident where Ms. Doe bent over for something, and Mr. McEllroy tried to take Ms. Doe's shirt off over her head as she bent down.

19. Ms. Doe alleges that, on or about March 20, 2019, Mr. McEllroy grabbed Ms. Doe' crotch area with his hand.

20. Ms. Doe complained to the nurse in charge, Christine Floreck, and also went to her direct supervisor, Erin West, Assistant Director of Life Enrichment Services, about the incident on or about March 20, 2019.

21. Ms. Doe alleges that, during her tenure, there was a nurse and co-employee, Y.M., who openly refused to go near or take care of Mr. McEllroy, because Mr. McEllroy was known to sexually assault the female employees.

22. Ms. Doe also alleges that a female aide, whose name Ms. Doe does not recollect, told Ms. Doe that Mr. McEllroy masturbated in front of the aide while it was the aide's turn to care for Mr. McEllroy.

23. Ms. Doe recalls multiple occasions during her tenure where there was mention of Mr. McEllroy masturbating during care from aides and nurses. In full candor, Ms. Doe did not observe this act directly.

24. Additionally, during her employment, Ms. Doe recollects that a female Certified Nursing Assistant ("CNA"), S. Last Name Unknown ("LNU"), also said to Ms. Doe that this female employee, S., was made to feel uncomfortable by Mr. McEllroy grabbing S., and S. said to Ms. Doe that S. did not want to take care of Mr. McEllroy, or words to that effect. Upon information and belief, S. was ultimately transferred to Shipping and Receiving and is no longer an aide.

25. Ms. Doe also recalls that a female Environmental Service Technician, K.C., had also complained about being sexually assaulted by Mr. McEllroy. K.C. was not directly involved in Mr. McEllroy's care.

26. Ms. Doe recalls that she repeatedly rebuffed this behavior – she told Mr. McEllroy to stop when it occurred, and she alerted management at the facility about the problem. Both acts constituted protected conduct or activity under Title VII of the Civil Rights Act of 1964.

27. When Ms. Doe approached management about the issue, they were already aware.

28. Ms. Doe alleges she complained internally about this misconduct multiple times throughout the years she was employed.

29. When a specific incident occurred, Ms. Doe told the charge nurse on the floor at the time, or the nurse assigned to Mr. McEllroy for the day.

30. Ms. Doe also recalls bringing her complaints to Dave Wisk, Unit Manager; Christine Floreck, Nurse in charge of Mr. McEllroy; Alice Christman, then Assistant Director of Therapeutic Recreation, and now the Director of Life Enrichment; and Rosalynn Otto, the Shop Steward for Ms. Doe's union.

31. These individuals did not provide prompt or appropriate action to prevent, correct, and remedy the sexually-harassing situation.

32. Ms. Doe felt that a large portion of her job ultimately became centered around avoiding potential sexual assault by Mr. McEllroy.

33. Ms. Doe also switched dining rooms to stay away from the assailant during Ms. Doe's employment.

34. On or about May 16, 2019, Mr. McEllroy and a male employee were painting together, Mr. McEllroy drew two hills, and stated, "You painted titties!", in a loud voice, for everyone – including Ms. Doe – to hear. Given Mr. McEllroy's conduct and sexual assaults previously, including of Ms. Doe herself, Ms. Doe did find it offensive.

35. On May 17, 2019, Ms. Doe had a conversation with male Therapy Aide, Angel Rosa, who was responsible for Mr. McEllroy during the incident from the prior day. Ms. Doe stated to Mr. Rosa that he should "stop encouraging" the conduct, or words to that effect. Ms. Doe stated, "We're trying to dissuade it, and you're encouraging it," or words to that effect. Ms. Doe meant that the female employees were trying to stop the conduct of Mr. McEllroy. The male employee, Mr. Rosa, was not doing the same. He was encouraging the behavior. Ms. Doe

5

alleges that Mr. Rosa responded, "You should know you shouldn't be that close to him," or words to that effect.

36. On May 20, 2019, Mr. Angel Rosa brought Mr. McEllroy over to the area where Ms. Doe was working. Ms. Doe stated, "Can you please stay over there?", or words to that effect, directing her comments to Mr. Angel Rosa, the male aide assisting Mr. McEllroy at the time.

37. Ms. Doe was not caring for or treating Mr. McEllroy at this time.

38. Ms. Doe was suspended on May 22, 2019.

39. Ms. Doe was subsequently terminated on May 24, 2019.

40. Ms. Doe was terminated after almost fifteen (15) years for rebuffing her own potential sexual assault.

41. Ms. Doe was terminated on account of her sex, and in retaliation for her complaints about sexual misconduct, and for rebuffing her own potential sexual assault.

42. Ms. Doe compares herself to the other male co-employees at the facility, including, for example, Mr. Angel Rosa, who were not sexually assaulted during employment.

43. Ms. Doe also compares herself to Y.M., a similarly-situated employee, who actually refused to directly treat or care for Mr. McEllroy on account of his known history of sexual assault and abuse of the female employees. Y.M. allegedly expressed to Ms. Doe that Y.M. had also been sexually assaulted, and also expressed to Ms. Doe that this was specifically why Y.M. did not want to care for Mr. McEllroy. Y.M. was never terminated, although Ms. Doe *was*. However, it is not clear that Y.M. actually engaged in protected conduct or activity regarding sexual assault as Ms. Doe did. Ms. Doe *did* engage in such protected conduct/activity

and complain about the sexual misconduct – sexual assaults – to the facility and to the union, and was subsequently terminated.

44.     Defendants failed to adequately inform, and train staff, including Ms. Doe, about sexual assault from Mr. McEllroy.  When Ms. Doe alerted the facility to the problem, they suggested they were already aware of the problem.  But Ms. Doe had not been aware of the problem with Mr. McEllroy.

### III.  CLAIMS FOR RELIEF

**COUNT I:**
**HARASSMENT/HOSTILE WORK ENVIRONMENT BASED ON SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000*e*, et seq.**
**(Plaintiff, Jane Doe v. Defendants, County of Lehigh and Cedarbrook Senior Care & Rehab)**

45.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

46.     Ms. Doe was subjected to harassment in the form of a hostile work environment based on sex.  The facts which support this are as follows:

   a.   Ms. Doe is female.

   b.   Ms. Doe recalls that, during her employment, there was a male resident, Mr. Timothy McEllroy ("Mr. McEllroy"), who was known by staff to regularly sexually assault the female employees.

   c.   Mr. McEllroy was not known to sexually assault any of the male employees.

   d.   Ms. Doe was sexually assaulted on multiple occasions at her job throughout her employment.

   e.   Ms. Doe alleges that she was sexually assaulted by Mr. McEllroy when Mr. McEllroy grabbed her breasts, many times, during the course of many years.

    f.        In or around 2017, Ms. Doe also recalls an incident where Ms. Doe bent over for something, and Mr. McEllroy tried to take Ms. Doe's shirt off over her head as she bent down.

    g.        Ms. Doe alleges that, on or about March 20, 2019, Mr. McEllroy grabbed Ms. Doe' crotch area with his hand.

47.       Ms. Doe complained to the nurse in charge, Christine Floreck, and also went to her direct supervisor, Erin West, Assistant Director of Life Enrichment Services, about the incident on or about March 20, 2019.

48.       Ms. Doe alleges that, during her tenure, there was a nurse and co-employee, Y.M., who openly refused to go near or take care of Mr. McEllroy, because Mr. McEllroy was known to sexually assault the female employees.

49.       Ms. Doe also alleges that a female aide, whose name Ms. Doe does not recollect, told Ms. Doe that Mr. McEllroy masturbated in front of the aide while it was the aide's turn to care for Mr. McEllroy.

50.       Ms. Doe recalls multiple occasions during her tenure where there was mention of Mr. McEllroy masturbating during care from aides and nurses.  In full candor, Ms. Doe did not observe this act directly.

51.       Additionally, during her employment, Ms. Doe recollects that a female Certified Nursing Assistant ("CNA"), S. Last Name Unknown ("LNU"), also said to Ms. Doe that this female employee, S., was made to feel uncomfortable by Mr. McEllroy grabbing S., and S. said to Ms. Doe that S. did not want to take care of Mr. McEllroy, or words to that effect.  Upon information and belief, S. was ultimately transferred to Shipping and Receiving and is no longer an aide.

52. Ms. Doe also recalls that a female Environmental Service Technician, K.C., had also complained about being sexually assaulted by Mr. McEllroy. K.C. was not directly involved in Mr. McEllroy's care.

53. Ms. Doe recalls that she repeatedly rebuffed this behavior – she told Mr. McEllroy to stop when it occurred, and she alerted management at the facility about the problem. Both acts constituted protected conduct or activity under Title VII of the Civil Rights Act of 1964.

54. When Ms. Doe approached management about the issue, they were already aware.

55. Ms. Doe alleges she complained internally about this misconduct multiple times throughout the years she was employed.

56. When a specific incident occurred, Ms. Doe told the charge nurse on the floor at the time, or the nurse assigned to Mr. McEllroy for the day.

57. Ms. Doe also recalls bringing her complaints to Dave Wisk, Unit Manager; Christine Floreck, Nurse in charge of Mr. McEllroy; Alice Christman, then Assistant Director of Therapeutic Recreation, and now the Director of Life Enrichment; and Rosalynn Otto, the Shop Steward for Ms. Doe's union.

58. These individuals did not provide prompt or appropriate action to prevent, correct, and remedy the sexually-harassing situation.

59. Ms. Doe felt that a large portion of her job ultimately became centered around avoiding potential sexual assault by Mr. McEllroy.

60. Ms. Doe also switched dining rooms to stay away from the assailant during Ms. Doe's employment.

61. On or about May 16, 2019, Mr. McEllroy and a male employee were painting together, Mr. McEllroy drew two hills, and stated, "You painted titties!", in a loud voice, for everyone – including Ms. Doe – to hear. Given Mr. McEllroy's conduct and sexual assaults previously, including of Ms. Doe herself, Ms. Doe did find it offensive.

62. On May 17, 2019, Ms. Doe had a conversation with male Therapy Aide, Angel Rosa, who was responsible for Mr. McEllroy during the incident from the prior day. Ms. Doe stated to Mr. Rosa that he should "stop encouraging" the conduct, or words to that effect. Ms. Doe stated, "We're trying to dissuade it, and you're encouraging it," or words to that effect. Ms. Doe meant that the female employees were trying to stop the conduct of Mr. McEllroy. The male employee, Mr. Rosa, was not doing the same. He was encouraging the behavior. Ms. Doe alleges that Mr. Rosa responded, "You should know you shouldn't be that close to him," or words to that effect.

63. On May 20, 2019, Mr. Angel Rosa brought Mr. McEllroy over to the area where Ms. Doe was working. Ms. Doe stated, "Can you please stay over there?", or words to that effect, directing her comments to Mr. Angel Rosa, the male aide assisting Mr. McEllroy at the time.

64. Ms. Doe was not caring for or treating Mr. McEllroy at this time.

65. Ms. Doe was suspended on May 22, 2019 and subsequently terminated on May 24, 2019 on account of sex.

66. Ms. Doe compares herself to the other male co-employees at the facility, including, for example, Mr. Angel Rosa, who were not sexually assaulted during employment.

67. Defendants failed to adequately inform, and train staff, including Ms. Doe, about sexual assault from Mr. McEllroy. When Ms. Doe alerted the facility to the problem, they

suggested they were already aware of the problem. But Ms. Doe had not been aware of the problem with Mr. McEllroy.

**WHEREFORE**, Plaintiff demands judgment in her favor and against Defendants, for an amount in excess of $150,000.00, including damages for any and all back and front pay, commissions, bonuses, benefits, and any other lost wages; compensatory damages for severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation, and embarrassment; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, costs of suit; and equitable/injunctive relief requiring that Defendants issue Ms. Doe a written apology for what occurred to her, requiring that Defendants post notice of the verdict in this matter at Doe's worksite, and requiring that Defendants revise their existing policies and procedures, if necessary, to state clearly that Defendants' sexual harassment policy applies to sexual harassment, including but not limited to sexual assault, by third-party residents of Defendants' nursing home facilities; and there will be no retaliation, including but not limited to terminating an employee in retaliation, for any employee who makes a complaint about sexual harassment, including but not limited to sexual assault, by a third-party resident.

**COUNT II:**
**RETALIATORY DISCHARGE/TERMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000*e*, et seq.**
**(Plaintiff, Jane Doe v. Defendants, County of Lehigh and Cedarbrook Senior Care & Rehab)**

47. All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

48. Plaintiff was hired by Cedarbrook Senior Care & Rehab; Cedarbrook Nursing Homes; Cedarbrook Nursing; and/or County of Lehigh, as a Therapeutic Recreation Aide I originally in 2004.

49. Ms. Doe performed satisfactorily and was then moved to full-time, Therapeutic Recreation Aide II.

50. Ms. Doe had been employed for almost fifteen (15) years and was a commendable employee prior to her wrongful and retaliatory discharge.

51. For example, during her nearly 15-year tenure, Ms. Doe was named in the Dreamweaver of the Year lineup in, Ms. Doe believes, 2015.

52. Ms. Doe recollects receiving positive performance reviews throughout her nearly fifteen (15) year tenure there.

53. Ms. Doe recalls that she repeatedly rebuffed sexually abusive behavior perpetrated by resident of the facility, Mr. McEllroy, throughout Ms. Doe's employment. Ms. Doe would tell Mr. McEllroy to stop the conduct when it occurred, and she alerted management at the facility about the problem. Both acts constituted protected conduct or activity under Title VII of the Civil Rights Act of 1964.

54. When Ms. Doe approached management about the issue, they were already aware.

55. Ms. Doe alleges she complained internally about this misconduct multiple times throughout the years she was employed.

56. When a specific incident occurred, Ms. Doe told the charge nurse on the floor at the time, or the nurse assigned to Mr. McEllroy for the day.

57. Ms. Doe also recalls bringing her complaints to Dave Wisk, Unit Manager; Christine Floreck, Nurse in charge of Mr. McEllroy; Alice Christman, then Assistant Director of Therapeutic Recreation, and now the Director of Life Enrichment; and Rosalynn Otto, the Shop Steward for Ms. Doe's union.

58. These individuals did not provide prompt or appropriate action to prevent, correct, and remedy the sexually-harassing situation.

59. Ms. Doe felt that a large portion of her job ultimately became centered around avoiding potential sexual assault by Mr. McEllroy.

60. Ms. Doe also switched dining rooms to stay away from the assailant during Ms. Doe's employment.

61. On or about May 16, 2019, Mr. McEllroy and a male employee were painting together, Mr. McEllroy drew two hills, and stated, "You painted titties!", in a loud voice, for everyone – including Ms. Doe – to hear. Given Mr. McEllroy's conduct and sexual assaults previously, including of Ms. Doe herself, Ms. Doe did find it offensive.

62. On May 17, 2019, Ms. Doe had a conversation with male Therapy Aide, Angel Rosa, who was responsible for Mr. McEllroy during the incident from the prior day. Ms. Doe stated to Mr. Rosa that he should "stop encouraging" the conduct, or words to that effect. Ms. Doe stated, "We're trying to dissuade it, and you're encouraging it," or words to that effect. Ms. Doe meant that the female employees were trying to stop the conduct of Mr. McEllroy. The male employee, Mr. Rosa, was not doing the same. He was encouraging the behavior. Ms. Doe alleges that Mr. Rosa responded, "You should know you shouldn't be that close to him," or words to that effect.

63. On May 20, 2019, Mr. Angel Rosa brought Mr. McEllroy over to the area where Ms. Doe was working. Ms. Doe stated, "Can you please stay over there?", or words to that effect, directing her comments to Mr. Angel Rosa, the male aide assisting Mr. McEllroy at the time.

64. Ms. Doe was not caring for or treating Mr. McEllroy at this time.

65. Ms. Doe was suspended on May 22, 2019.

66. Ms. Doe was subsequently terminated on May 24, 2019.

67. Doe was terminated after almost fifteen (15) years for rebuffing her own potential sexual assault.

68. Ms. Doe was terminated on account of her sex, and in retaliation for her complaints about sexual misconduct, and for rebuffing her own potential sexual assault.

69. Ms. Doe compares herself to the other male co-employees at the facility, including, for example, Mr. Angel Rosa, who were not sexually assaulted during employment.

70. Ms. Doe also compares herself to Y.M., a similarly-situated employee, who actually refused to directly treat or care for Mr. McEllroy on account of his known history of sexual assault and abuse of the female employees. Y.M. allegedly expressed to Ms. Doe that Y.M. had also been sexually assaulted, and also expressed to Ms. Doe that this was specifically why Y.M. did not want to care for Mr. McEllroy. Y.M. was never terminated, although Ms. Doe *was*. However, it is not clear that Y.M. actually engaged in protected conduct or activity regarding sexual assault as Ms. Doe did. Ms. Doe *did* engage in such protected conduct/activity and complain about the sexual misconduct – sexual assaults – to the facility and to the union, and was subsequently terminated.

**WHEREFORE**, Plaintiff demands judgment in her favor and against Defendants, for an amount in excess of $150,000.00, including damages for any and all back and front pay, commissions, bonuses, benefits, and any other lost wages; compensatory damages for severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation, and embarrassment; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, costs of suit; and equitable/injunctive relief requiring that Defendants issue

Ms. Doe a written apology for what occurred to her, requiring that Defendants post notice of the verdict in this matter at Doe's worksite, and requiring that Defendants revise their existing policies and procedures, if necessary, to state clearly that Defendants' sexual harassment policy applies to sexual harassment, including but not limited to sexual assault, by third-party residents of Defendants' nursing home facilities; and there will be no retaliation, including but not limited to terminating an employee in retaliation, for any employee who makes a complaint about sexual harassment, including but not limited to sexual assault, by a third-party resident.

### COUNT III:
### WRONGFUL DISCHARGE/TERMINATION BASED ON SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000*e*, et seq. (Plaintiff, Jane Doe v. Defendants, County of Lehigh and Cedarbrook Senior Care & Rehab)

71. All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

72. Ms. Doe was terminated May 2019 on account of her sex, in retaliation for her complaints about sexual misconduct, and for rebuffing her own potential sexual assault.

73. Termination of an employee on account of a report of sexual assault constitutes a form of sex discrimination – a separate and distinct act of sex discrimination – as well as being a form of retaliation.

74. In addition, termination of an employee on account of a report of sexual *harassment* constitutes a form of sex discrimination – a separate and distinct act of sex discrimination – as well as being a form retaliation.

75. Ms. Doe compares herself to the other male co-employees at the facility, including, for example, Mr. Angel Rosa, who were not sexually assaulted during employment. Mr. Rosa was also not terminated, while Ms. Doe was terminated.

76. Ms. Doe also compares herself to Y.M., who, although Y.M. is female, upon information and belief, Y.M. did not engage in protected conduct or activity with respect to Y.M.'s alleged sexual assault. Ms. Doe compares herself to Y.M. as a comparator who was similarly situated but treated differently by Defendants, in being retained while Ms. Doe was terminated, on account of sex, as the act of terminating an employee because they make a complaint of sexual assault constitutes a form of sex discrimination – a separate and distinct act of sex discrimination – in and of itself.

**WHEREFORE**, Plaintiff demands judgment in her favor and against Defendants, for an amount in excess of $150,000.00, including damages for any and all back and front pay, commissions, bonuses, benefits, and any other lost wages; compensatory damages for severe emotional distress, pain and suffering, mental anguish, anxiety, depression, humiliation, and embarrassment; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, expert witness fees, costs of suit; and equitable/injunctive relief requiring that Defendants issue Ms. Doe a written apology for what occurred to her, requiring that Defendants post notice of the verdict in this matter at Doe's worksite, and requiring that Defendants revise their existing policies and procedures, if necessary, to state clearly that Defendants' sexual harassment policy applies to sexual harassment, including but not limited to sexual assault, by third-party residents of Defendants' nursing home facilities; and there will be no retaliation, including but not limited to terminating an employee in retaliation, for any employee who makes a complaint about sexual harassment, including but not limited to sexual assault, by a third-party resident.

## IV.  RELIEF REQUESTED

**WHEREFORE,** Plaintiff, Jane Doe, demands judgment in her favor and against Defendants together in a sum greater than $150,000.00, including:

16

A. Actual and compensatory damages including, but not limited to, restitution, expectation damages, consequential damages, back pay, lost wages, and lost benefits, lost future wages or front pay, lost future earning capacity, and economic loss;

B. Pain and suffering, mental anguish, and severe emotional distress, on account of being sexually assaulted multiple times at her place of work, sexually harassed throughout much of her tenure with Defendants, and being terminated illegally in retaliation for reporting and rebuffing the sexual abuse.

C. Punitive damages for Defendants' evil motive and reckless indifference to Doe's federally-protected rights.

D. Injunctive/equitable relief requiring that Defendants issue Ms. Doe a written apology for what occurred to her.

E. Injunctive/equitable relief requiring that Defendants post notice of the verdict in this matter at Doe's worksite.

F. Injunctive/equitable relief requiring that Defendants revise their existing policies and procedures, if necessary:

    1. To state clearly that Defendants' sexual harassment policy applies to sexual harassment, including but not limited to sexual assault, by third-party residents of Defendants' nursing home facilities;

    2. There will be no retaliation, including but not limited to terminating an employee in retaliation, for any employee who makes a complaint about sexual harassment, including but not limited to sexual assault, by a third-party resident.

G. Any other further relief this Court deems just, proper, and equitable.

## JURY DEMAND

Plaintiff hereby requests a trial by jury of eight (8) members on all counts so triable.

                                      Respectfully submitted,

                                      **LAW OFFICES OF ERIC A. SHORE, P.C.**

DATED:  06/25/2020                BY: _____
                                      **JUSTIN F. ROBINETTE, ESQUIRE**
                                        Two Penn Center
                                        1500 JFK Boulevard, Suite 1240
                                        Philadelphia, PA 19102
                                        Tel:  (215) 944-6121
                                        Fax: (215) 944-6124
                                        E-mail: JustinR@ericshore.com

                                        *Attorney for Plaintiff, Jane Doe*